GENERAL ELECTRIC CO. v. SAVE ELECTRIC CORPORATION.

(District Court, E. D. New York. June 26, 1924.)

Patents ⬤⟜328—1,423,956 and 1,423,957, for improved tipless incandescent electric lamp and method for making, held valid and infringed.

Mitchell & White patents, Nos. 1,423,956 and 1,423,957, July 25, 1922, for improved tipless incandescent electric lamp and method of making, held valid and infringed.

In Equity. Patent infringement suit by the General Electric Company against the Save Electric Corporation. Decree for plaintiff.

Howson & Howson, of New York City (A. D. Lunt and Charles McClair, both of Schenectady, N. Y., and J. H. Anderson, of Brooklyn, N. Y., of counsel), for plaintiff.

Frank J. Kent, of New York City, for defendant.

GARVIN, District Judge. The suit is upon two patents, granted July 25, 1922, to plaintiff, as assignee of Mitchell & White, one involving an improved tipless incandescent electric lamp and method of making the same, being numbered 1,423,956, and the other, numbered 1,423,957, for an apparatus designed to carry out the method and to make the lamp which is the subject of the first patent.

For many years the standard incandescent electric lamp has consisted of an inclosing glass bulb and a glass stem, which supports the filament and through which pass the leading-in wires. The bulb is fused with the

stem in such a manner as to form a sealed glass inclosure for the filament. In the lamp, which is well known under the name of the "tungsten filament lamp," there is an additional glass part, a central rod, called the "cane," mounted on the inner end of the stem, which is used as a support for the filament wire. In the manufacture of the tungsten lamp, after the stem, upon which the filament has been mounted, has been sealed in the bulb, there yet remained the operation of emptying the bulb of air and any moisture that might remain therein. This was effected by applying and fusing an exhaust tube to the outer rounded end of the bulb (a small hole having been made therein before the sealing operation), connecting the same with an exhausting pump, withdrawing in this way the air and moisture from within the bulb, and thereupon sealing off the lamp by applying a gas flame to the tube close to the bulb. As a result the tube fused and closed up at this point, leaving a sharp-pointed tip at the outer end of the bulb, at the point where the tube had been connected therewith.

It has always been recognized that this tip has been an undesirable feature of the bulb. It has necessarily involved delay in the process of manufacture, has been a frequent cause of breakage, and has at times caused injury to those handling the bulb, because of the sharp point. As soon as electric lamps became of commercial value, attempts were made to eliminate the tip. These efforts were to no avail, from a practical standpoint, because of the prohibitive cost, until the invention of Mitchell & White appeared. Their lamp is produced at less cost to the consumer than the tipped lamp which it supplanted.

The invention is well described in the claims upon which an adjudication is sought. They are as follows: In patent numbered 1,423,956:

"1. The method of glass working which comprises inserting a glass tube into another hollow glass body, applying heat to cause the formation of a solid glass mass closing off the tube and glass body, and then forming a passage extending entirely through said mass and communicating with the passage in said tube."

"3. The method of glass working which comprises inserting a glass tube into another hollow glass body, applying heat to cause the formation of a solid glass mass closing off the tube and glass body, compressing said mass, and then forming by means of gas pressure a passage extending entirely through said mass and communicating with the passage in said tube."

"6. A stem comprising a stem tube having an exhaust tube therein, said tubes being fused together at their ends to form a union having therein an apertured bulb portion communicating with said exhaust tube.

"7. In an incandescent lamp or other sealed electrical device, a stem tube, leading-in wires extending through said stem tube, an exhaust tube contained within said stem tube, and an element uniting the ends of said tubes having sealed therein said leading-in wires and having therein a bulb portion containing an aperture disposed between said leading-in wires."

"10. The method of making stems for incandescent lamps and other sealed devices, which consists in assembling a stem tube, an exhaust tube inside of said stem tube and leading-in wires extending longitudinally of said tubes, fusing together a portion of said stem tube and of said exhaust tube to produce a solid mass of glass inclosing portions of said leading-in wires and closing off said tubes and then forming a passage through said mass communicating with said exhaust tube.

"11. The method of making stems for incandescent lamps and other sealed devices, which consists in assembling a stem tube, an exhaust tube inside of said stem tube, and leading-in wires extending between the said tubes, fusing a portion of said tubes to produce a solid mass of glass inclosing portions of said leading-in wires and closing off the said tubes, and then forming a passage through said mass between said leading-in wires communicating with the said exhaust tube.

"12. The method of making stems for incandescent lamps and other sealed devices, which consists in assembling a stem tube and an exhaust tube with the latter inside of the former, fusing portions of said tubes together to form a solid mass of glass, and then delivering gas pressure through said exhaust tube to expand the mass of fused glass to form a chamber communicating with said tube and to blow an aperture through the wall of said chamber."

"17. The method of making stems for incandescent lamps and other sealed devices, which consists in assembling a stem tube, leading-in wires, and an exhaust tube with the exhaust tube inside of the stem tube and the leading-in wires extending longitudinally of said tubes, fusing a portion of said stem tube to form a solid mass of glass inclosing a portion of said leading-in wires,

and closing off said exhaust tube, compressing said mass of glass, and then delivering gas pressure through said exhaust tube to expand said mass of glass and blow an operture therethrough.

"18. The method of making stems for incandescent lamps and other sealed devices, which consists in assembling a stem tube, leading-in wires, and an exhaust tube with the exhaust tube inside of the stem tube and the leading-in wires extending between said tubes, fusing a portion of said stem tube to form a solid mass of glass inclosing a portion of said leading-in wires and closing off said exhaust tube, and then delivering gas pressure through said exhaust tube to expand said mass of glass and blow·an aperture therethrough between said leading-in wires."

"24. The combination, with a bulb of an electric incandescent lamp or other sealed device, of a stem tube sealed to said bulb at the outer end of said stem tube, an exhaust tube disposed within said stem tube, and a union integrally connecting the walls of said tubes at the inner end of said stem tube, said union having a chamber therein communicating with said exhaust tube and also with the interior of said bulb and having a materially larger diameter than that of the passage in said exhaust tube."

And in patent numbered 1,423,957:

"1. In a machine for making parts for lamps and similar articles, the combination of means for supporting a stem tube, means for supporting an exhaust tube within said stem tube, means for fusing together a portion of said exhaust tube and of said stem tube adjacent to their inner ends, and means for directing a flow of gas into said exhaust tube to expand and form an aperture in the mass of glass formed by said fusion.

"2. In a machine for making parts for lamps and similar articles, the combination of means for supporting a stem tube, means for supporting an exhaust tube within said stem tube, means for supporting a glass rod with an end thereof aligned with the inner ends of said stem tube and said exhaust tube, means for fusing together said parts at said aligned ends, and means for directing a flow of gas into said exhaust tube to expand and form an aperture in the mass of glass formed by said fusion."

"6. The combination in a glass-working machine of means for supporting a stem tube, means for supporting an exhaust tube within said stem tube, means for supporting leading-in wires between said exhaust tube and said stem tube, and means for support-

ing a glass rod with an end thereof aligned with the ends of said stem tube and said exhaust tube."

"11. In a machine for making parts for lamps and similar articles, the combination of means for supporting a stem tube, means for supporting an exhaust tube within said stem tube, means for supporting leading-in wires between said exhaust tube and said stem tube, means for supporting a glass rod with an end thereof aligned with the ends of said stem tube and said exhaust tube, means for releasing the aforesaid supporting means for the insertion of the aforesaid stem parts or the removal of the completed stem, means for fusing said parts at their aligned ends, means for clamping the fused mass thus produced to form a seal about said leading-in wires, means for fusing said tubes adjacent to said seal, and means for directing a flow of gas into the open end of said exhaust tube to expand and form an aperture in said fused mass."

"13. In a machine for producing parts for incandescent electric lamps and similar devices comprising a filament or other conductor, the combination of means for producing a fused glass mass uniting an element furnishing support for said conductor and an exhaust tube and means for directing gas pressure into said exhaust tube to blow out·an aperture in said fused glass mass."

"15. In a machine of the character described, the combination of means for supporting a glass stem tube and an exhaust tube with their ends juxtaposed, means for producing a fused glass mass uniting said ends, means for directing gas pressure into said exhaust tube to blow out an aperture in said fused glass mass, and means whereby said last-named means is automatically brought into operation after the production of said fused mass."

"17. In a machine of the character described, the combination with a movable carrier having thereon a supporting means for an assembly of glass stem parts including a projecting exhaust tube and a blowing device comprising a nozzle disposed in the path of travel of said carrier and automatically brought into operation to direct gas pressure into said exhaust tube."

In the prior art, some inventors sealed the wires into the stem, at the same time providing mechanical means by which was kept open the passage through the central tube. Obviously the Mitchell & White method is quite different, for they close the tube and glass body and then form a passage. See

claim 1. So far as their machine is concerned, there seems to be little in the prior art that requires discussion. Their machine directs the flow of gas automatically. That of the Brannin patent, No. 833,196, cited by defendant, was operated by hand for each separate stem. Furthermore, the Mitchell & White machine has another novel feature, to wit (claim 6): "Means for supporting a glass rod with an end thereof alligned with the ends of said stem tube and said exhaust tube." Nothing of the kind had appeared before. There had been no combination in stem machines of means for supporting the stem and rod in alignment in conjunction with means for supporting an exhaust tube.

The defendant offered in evidence more than 30 prior patents, but does not explain how they anticipate, except as to a limited number. This does not strengthen defendant's position, nor is it persuasive that the defense is advanced with any great confidence. All the devices which his expert explains appear clearly distinguishable. The lamps made by defendant are substantially like plaintiff's. The machines, by the statement of defendant's counsel made at the trial, are the same to all practical intents and purposes.

Careful consideration has been given to defendant's contention that certain of plaintiff's claims should be limited in construction, so as to mean that the bulb-blown portion and the aperture must be within the flattened portion of the fused mass. A fair reading of the specifications does not justify such a limitation. In fact, it clearly appears that the point at which the glass is blown out by the air pressure is not necessarily within the flattened portion of the glass. Nowhere is it so indicated, while, on the other hand, the specification states (line 30, page 2): "The low pressure accomplishes this by keeping the exhaust tube against the stem tube, thus securing a thorough fusion of the glass, which is then blown thin until it blows out at some point to form an aperture." This expression, "at some point," indicates that there is no intention to limit the opening created to the flattened portion of the fused glass. Even if defendant were correct in its contention, the construction of defendant's stems brings the bulb partly within and partly above the flattened mass, so that the actual contribution to the art by Mitchell and White is employed. To permit the appropriation of valuable advances in such a manner would

be to take away all incentive to those engaged in inventive activity.

The court is of the opinion that the plaintiff has a novel and valuable invention in its lamp, process, and machine, which defendant has infringed. If these conclusions are correct, plaintiff must have a decree for injunction and accounting on the claims upon which an adjudication is desired.